EDMUND H. TALBOT & another, trustees, & others *vs.*
REDNALLOH COMPANY.

Suffolk.    April 3, 4, 1933. — June 2, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Landlord and Tenant,* Existence of relationship, Construction of lease,
Assignment of lease, Extension of lease.

In an action by the owner of a building against a corporation as lessee
thereof for rent, the following facts appeared: In 1887, the owner
made a lease for a term of twenty years to three partners. Before
the end of the term, the parties made an agreement extending it for
ten years. During that ten years one partner died. His surviving
partners continued with the business and made an agreement with
the owner for a further extension of ten years. A second partner
then died, and the sole surviving partner incorporated the defendant,
receiving all the capital stock and assigning to it the assets of the
partnership. The owner did not know of such assignment. Before
the expiration of the last extension of the lease, the owner and the
defendant corporation made an agreement in writing under seal
which, after a recital as to the original lease and the successive exten-
sions thereof, "further extended" the lease for a term of twenty
years "upon the same terms and conditions in all respects as in" the
original lease except that the rent "to be paid . . . by the lessees"
was changed in amount. This agreement recited that the defendant
corporation caused its corporate seal to be thereto affixed and the
presents signed by the individual who was the sole survivor of the
original partners, its duly authorized president, and the signature
was the corporate name, "By" that individual, "President." He in no
way signed in an individual capacity. There were other stockholders
in the defendant corporation at that time. Over six years later the
defendant corporation joined with the personal representatives of
the two deceased partners in assigning all their right, title and in-
terest in the lease as extended to a new corporation, and the owner
at the request of the defendant corporation consented to the assign-
ment. The second corporation became bankrupt. The rent sought
in the action was for months following such bankruptcy. There
was a finding and an order of judgment for the plaintiff. The de-
fendant corporation appealed. *Held,* that

(1) The substance of the last extension agreement, signed by the
owner and by the defendant corporation, whatever its form, was that
the defendant corporation was to have the rights and be subject to
the obligations of lessee as measured by the terms of the agreement;

(2) The defendant corporation's contention that it never became a

lessee of the property but was no more than a licensee, subtenant or assignee of the premises could not be sustained;

(3) The extension agreement between the owner and the defendant corporation must be construed as creating a new term to the defendant corporation as lessee, incorporating the provisions of the original lease with a change as to the amount of rent;

(4) The consent of the owner to the assignment to the second corporation did not relieve the defendant corporation from the covenants made in the extension agreement to pay rent for the full twenty years;

(5) The finding and order of judgment were affirmed.

CONTRACT for rent. Writ dated June 2, 1932.

In the Superior Court, the action was heard by *Whiting*, J., upon an agreed statement of facts. The recitals at the beginning of the agreement of October 3, 1922, described in the opinion, were as follows:

"The Indenture of Lease dated Feb. 1, 1887, between Warren B. Potter of Boston, Massachusetts, lessor, and Louis P. Hollander, T. Clarence Hollander and Benjamin F. Pitman, co-partners under the firm name and style of L. P. Hollander & Co., lessees, which firm has been succeeded by a corporation established under the laws of Massachusetts, of the estate numbered 82 and 83 (now 202 and 204) Boylston Street, in said Boston, for the term of twenty years from said Feb. 1, 1887, which lease was on the 28th day of January, 1904, extended by the devisees of said Potter for the term of ten years from and after the 31st day of January, 1907, and which lease was on the 28th day of December, 1910, further extended for the term of ten years from and after the 31st day of January, 1917, expiring on the 31st day of January, 1927, is hereby by mutual agreement further extended for the term of twenty years. . . ."

Other material facts are stated in the opinion. The judge found for the plaintiffs in the sum of $3,720.82, and ordered judgment accordingly. The defendant appealed.

*R. G. Dodge*, for the defendant.

*G. K. Black*, for the plaintiffs.

CROSBY, J. This is an action of contract brought to recover rent for the months of April and May, 1932, alleged

to be due from the defendant in respect to the premises
formerly known as 82 and 83 Boylston Street, Boston, but
now known as 202–204 Boylston Street. The case was
tried on an original and a supplemental statement of agreed
facts before a judge of the Superior Court who ordered
judgment for the plaintiff; and the defendant appealed.

To understand the questions of law involved it is neces-
sary to state somewhat at length the facts as disclosed by
the record. On or about February 1, 1887, Warren B.
Potter, the owner of the premises, executed, as lessor, an
indenture of lease of the premises with Louis P. Hollander,
T. Clarence Hollander and Benjamin F. Pitman, partners
under the firm name and style of L. P. Hollander & Co., as
lessees. The term was for twenty years from that date.
On or about January 28, 1904, the owners, who then were
and have continued to be trustees and devisees under the
will of Potter, made an agreement with the lessees extend-
ing the term of the lease for the further term of ten years
from January 31, 1907. Louis P. Hollander died in 1909,
and thereafter the business was carried on by the other two
partners under the same firm name. On or about Decem-
ber 28, 1910, the then owners entered into an agreement
with the two partners whereby the lease of February 1,
1887, as extended, was extended for a further term of ten
years from January 31, 1917, at the same rental and upon
the same terms and conditions, with one additional provi-
sion relating to repairs and improvements to be made upon
the demised premises by the lessees. Benjamin F. Pitman
died in 1918. Thereafter the business was carried on by
T. Clarence Hollander under the old firm name. On June
24, 1919, the defendant was incorporated under the laws of
this Commonwealth, its name then being L. P. Hollander
Company. From the defendant's brief it appears that the
entire capital stock was issued to T. Clarence Hollander.
On June 30 of that year by a written instrument, he trans-
ferred to the defendant "all . . . [his] right, title and in-
terest to the business hitherto conducted by . . . [him]
under the name of L. P. Hollander & Company. . . ." The
bill of sale "specifically covers all the cash on hand . . .

good will and everything else connected with or incidental to . . . [his] business conducted as aforesaid. . . ." This instrument was not recorded and the owners had no knowledge of its existence until the bringing of this action. Unless covered by this instrument there was no written assignment of the lease. Thereafter the defendant, with the knowledge of the owners, occupied the premises, paid the rent and conducted the business. There was no express consent given by the owners to such occupation and none was requested by the defendant. On or about October 3, 1922, the owners made an agreement with the defendant whereby the lease of February 1, 1887, extended as aforesaid, was ". . . by mutual agreement further extended for the term of twenty years from said 31st day of January, 1927, . . . upon the same terms and conditions in all respects as in said Indenture of Lease dated Feb. 1, 1887, contained, and in the extensions thereof, except the payments of rent therein stipulated in said lease and extensions thereof to be paid from and after the 31st day of January, 1927, (which payments of rent are to be paid in equal monthly instalments) by the lessees, are to be as follows: . . . 5 years from Jan. 31, 1932, to Jan. 31, 1937 — $27,500 per year." In the annexed copy of this agreement it is recited that the devisees under the will of Potter have set their hands and common seal, and that the defendant caused its corporate seal to be thereto affixed and the presents signed by T. Clarence Hollander, its duly authorized president. The defendant's signature appears in the following form: "L. P. Hollander Co. By T. Clarence Hollander, President." The signature of T. Clarence Hollander does not otherwise appear. At that time, October 3, 1922, the stock of the defendant was held substantially as follows: seventy-five hundred preferred shares by Almira Pitman, twenty-five hundred preferred shares and thirty-four thousand eight hundred common shares by T. C. Hollander, about seven hundred common shares by fifty-four employees, the balance of the common shares, amounting to forty-five hundred, being held in the treasury of the company. On or about March 29, 1929, the defendant com-

pany, together with T. C. Hollander and Lorita Hollander Dickerman as administratrix *de bonis non* with the will annexed of Louis P. Hollander, and Almira Pitman as executrix of the will of her husband, Benjamin F. Pitman, executed an assignment of all their right, title and interest in the lease as extended to the L. P. Hollander Company Inc. which corporation covenanted with the assignors "to pay the rent which may hereafter become due according to the terms of the said lease, and to perform all the covenants and stipulations in the said lease contained which are to be performed on the part of the lessee." The owners in writing consented to this assignment at the request of the defendant. L. P. Hollander Company Inc. also agreed to indemnify the defendant and T. C. Hollander against any loss from failure of itself or its successors or assigns fully to perform all the covenants contained in five specified leases, one of which was the lease dated February 1, 1887, "as extended by extension of 3rd October, 1922, from devisees of lessor." On or about May 1, 1929, the then owners delivered to Almira Pitman individually, and as heir of and executrix of the will of Benjamin F. Pitman, a release under a common seal of all demands based on or arising out of the lease originally executed February 1, 1887, and all extensions, renewals and assignments thereof. On about April 2, 1929, the name of the defendant was changed from L. P. Hollander Company to Rednalloh Company. On February 19, 1932, L. P. Hollander Company Inc. filed a voluntary petition in bankruptcy and received its discharge on July 26, 1932. Its trustee in bankruptcy paid $1,005.63 for use and occupation by him of the premises in the month of April, 1932. Apart from this amount neither the assignee nor the defendant has paid any rent for the months of April or May, 1932. By the terms of the agreement of October 3, 1922, the rent for each of these months was $2,291.67.

The general contention of the defendant is that its relation to the property has never been that of lessee, but only that of licensee, subtenant or assignee, and that, when it ceased to occupy the premises and with the consent of the

owners assigned the lease, it was no longer liable for rent thereafter accruing. It contends that the intention manifested by the agreement of "extension" of October 3, 1922, construed in the light of the two previous "extensions," was to continue the lease of February 1, 1887, as if it had originally stipulated for a lease for a term of sixty years. It argues that the word "lessees" as used in the provision that ". . . the payments of rent therein stipulated . . . and extensions thereof to be paid from and after the 31st day of January, 1927, (which payments of rent are to be paid in equal monthly instalments) by the lessees, are to be as follows . . ." refers to the three original partners described in the opening clause as lessees. To maintain this contention it follows that the defendant must also ascribe an intention to the parties that the original lessees were to be bound by the covenants of the lease as so extended.

The agreement of October 3, 1922, must be examined in the light of all the circumstances in order to ascertain the meaning of its language as used by the parties, *New York Central Railroad* v. *Stoneman,* 233 Mass. 258, 262, *McClintic-Marshall Co.* v. *Freedman,* 274 Mass. 558, 563, and with the guide of established principles for the construction of contracts. It is plain that, whatever the form of the agreement, the substance was that the defendant was to have the rights and be subject to the obligations of lessee as measured by the terms of the agreement. We have not found a case containing facts sufficiently similar to be of assistance here. However, it is a well settled principle that a construction rendering a contract valid and enforceable is to be preferred to one which makes it void or its performance impossible or meaningless. *Vickers* v. *Electrozone Commercial Co.* 67 N. J. L. 665, 676. *Russell* v. *Phillips,* 14 Ad. & El. (N. S.) 891, 901. Williston on Contracts, § 620. "All agreements, if possible, are to be construed so as to give them effect, and so as to be in harmony with law and justice." *Old Colony Street Railway* v. *Brockton & Plymouth Street Railway,* 218 Mass. 84, 91. "The rules guiding the courts in such cases will not permit of a construction that would render the contract practically inoperative and a nullity." *Commercial*

*Union Assurance Co. Ltd.* v. *Foley Brothers*, 141 Minn. 258, 261.

When the recital of parties in a lease makes it ambiguous as to whether the owner was intended to be the lessor, it will be presumed that the lease was intended to be made between parties capable of making it, and the lease will, in such circumstances, be so construed as to make the owner the lessor. *Whitson* v. *Adams*, 93 N. J. Eq. 456. See also *Chapman* v. *Smith*, [1907] 2 Ch. 97. In the present case the defendant contends that the effect of the agreement of October 3, 1922, was to impose the obligations of the lease on the original lessees, although at that time two of them had died. From some time in 1918 the business established by the three original lessees had been conducted alone by T. C. Hollander, and from June 30, 1919, by a corporation to which he had transferred it. While the agreement recites that T. C. Hollander had authority to sign for the defendant, it contains no recital of authority on the part of any one to impose an obligation on the estates of the two deceased lessees. The business previously had been sold to the defendant corporation. Almira Pitman, executrix of Benjamin F. Pitman's estate, owned seventy-five hundred preferred shares of the defendant's stock, but this appears to have been in her individual, and not in her representative, capacity. In view of the contention that the original lessees were to be held liable the following sentence from *Guernsey* v. *Cook*, 117 Mass. 548, at page 550, seems pertinent: "To hold the company bound by promises in which it has no interest, there ought to be unequivocal evidence that such was the intention of the contracting parties." It is not reasonable to suppose that the defendant believed it had any right to impose obligations upon the estates of the two original lessees then deceased. The statements of agreed facts do not disclose how many of these facts were known to the lessors, but the agreement of October 3, 1922, recites that L. P. Hollander & Co. had been succeeded by a corporation plainly shown to be the defendant. The lessors knew that the defendant had conducted the business on the leased premises, and it must be inferred that they knew that Louis P. Hollander and Benjamin F.

Pitman had deceased, for if they had thought they were living and it was their purpose to deal with them, it is reasonable to infer they would have dealt directly with them or with their agent. If they understood that they were living, the same consideration would be conclusive, that they did not mean to give them rights or impose liabilities upon them. It follows that neither the defendant nor the lessors could have intended that these deceased lessees, or their estates, should be bound. Therefore they must have intended that the defendant should be bound by the terms of the leases, for it cannot be assumed that the parties believed the leases would be without any legal effect, which would be the result if neither the defendant nor the original lessees were bound. It is not to be assumed that the defendant intended that the agreement was not to be binding upon it. Such bad faith cannot be imputed to it. Moreover, such intent would be immaterial since the defendant would be bound by the reasonable construction placed upon its acts by the lessors. *Finkelstein* v. *Sneierson*, 273 Mass. 424, 428.

If it is true, as the defendant contends, that the agreement of October 3, 1922, did not result in a change of the defendant's status after January 31, 1927, to that of a lessee, it cannot be held liable for rent accruing after it had, with the owners' consent, assigned its interest in the lease to L. P. Hollander Company Inc. The circumstance that the defendant signed the agreement is evidence that it intended to bind itself. Its suggestion, that the signing of the agreement by T. Clarence Hollander as president merely indicated that he approved it, is not conclusive. It cannot be inferred that a business man at the head of an important corporation and with long business experience would make with much formality a mere gesture. The natural method of carrying out an intent to continue the rights and liabilities of the original lessees would have been to deal directly with the representatives of both deceased partners and with T. C. Hollander in his own behalf. The form of his signature shows that he signed as the agent of the defendant, and it may reasonably be thought that the defendant was intended to be bound thereby. The vote of the defendant's directors authorized

him to execute and deliver in the name and behalf of the defendant the extension of the lease "between the devisees under the will of Warren B. Potter and this corporation." It is manifest that the directors considered the defendant a party to the extended lease. It is not reasonable to assume that the parties believed that the defendant had any authority to bind the estates of the two original lessees then deceased; therefore, it could be rationally thought the defendant intended to bind itself. If neither the defendant nor the lessors so intended, the act of the parties was but an idle ceremony, and neither T. Clarence Hollander, the surviving original lessee, nor the representatives of the deceased original lessees, could be held liable under the agreement; nor could they have asserted any rights under it as they were not parties to it and it was under seal. *Seretto* v. *Schell,* 247 Mass. 173, 176. *Cavanaugh Bros. Horse Co.* v. *Gaston,* 255 Mass. 587, 590. *Berman* v. *Rowell,* 274 Mass. 260, 268.

It is manifest that the word "lessees" appearing in the last clause of the agreement refers to the persons then carrying on the business and not to the lessees referred to in the introductory clause. The contention of the defendant that at most it was only that of an assignee of the lease and the extensions thereof cannot be sustained. Plainly the defendant did not intend to place itself in a position where it would have been ejected from the premises at the will of the lessor. Whether or not the language of the instrument transferring the business to the defendant was broad enough to include an assignment of the lease, the owners did not then know of the existence of that instrument. They had not given any formal consent to the assignment. On the defendant's construction of the lease, and in view of the considerations above described, after January 31, 1927, there would have been no lessee of whose leasehold the defendant could have been an assignee. Furthermore, the natural way to continue the management under which the defendant's liability "was at most that of an assignee" would have been to deal directly with the lessees of the then existing lease. That they did not so deal justifies the inference that such was not the intent of

the parties. The words of the agreement that " . . . payments of rent . . . by the lessees, are to be as follows: . . ." and the description in the introductory clause of the three original partners as lessees doubtless lend support to the contention of the defendant. Although to some extent the rights and liabilities in form are expressed to be those of the original lessees, this was for convenience of terminology in incorporating the provisions of the original lease as defining the terms of that agreement and for consistency of language, but the substance and effect of the matter were that the defendant was to have the same rights and liabilities established. The decision in *Hubbard* v. *Knous*, 3 Gray, 567, does not sustain the defendant's contention. The lease there considered named Cleaveland and Badger as lessees and stated that "the said lessees" promised to pay the rent. The lessees being thus identified it was held that the lessees were the parties named, and that the signature and seal of the defendant Knous, he not being one of those named and therefore not a party and not one meant to be bound, did not render him liable for rent in an action on the lease. In the present case the "mutual agreement" is between the plaintiffs and the defendant, as appears from the signatures which are the only evidence upon which it may be ascertained who entered into the agreement. The word "extension" when used in its proper and usual sense in connection with a lease means a prolongation of the previous leasehold estate. *Shannon* v. *Jacobson*, 262 Mass. 463, 465. In the case at bar a new and different party signed the agreement, and simply because the word "extended" was used it cannot be thought the parties intended to bind the original lessees, especially where there is ample evidence to the contrary. The facts relied on by the plaintiffs and the defendant in support of their respective contentions in point of time were separated by a space of about seven years from the date of the agreement. The defendant relies on the recitals in the assignment from itself to L. P. Hollander Company Inc. dated March 29, 1929, and containing a representation that the defendant was the present assignee and holder of the lease. The plaintiffs refer to the clause in the original lease forbidding

assignment without consent in writing of the lessors, and assert that if the defendant had considered itself an assignee and not bound by the agreement of 1922 it would not have sought permission to assign, one consent to the assignment exhausting the efficacy of the clause forbidding assignment without the lessor's consent. *Dumpor's Case,* 4 Co. Rep. 119. *Aste* v. *Putnam's Hotel Co.* 247 Mass. 147, and cases cited at page 151. There had been no written consent to an assignment. If the defendant was bound as a lessee to the agreement of October 3, 1922, it was not released from the contractual obligations in its covenants by the assignment to L. P. Hollander Company Inc. with the consent of the lessors. *Pfaff* v. *Golden,* 126 Mass. 402. See also *Dwight* v. *Mudge,* 12 Gray, 23, 25; Ann. Cas. 1916 E 793. The lessors' consent to the assignment does not indicate an intent to create a new contract and annul the lease as against the original lessees and does not show a surrender of the lease accepted by the lessors. In the case of an assignment by the lessee the collection of rents from the assignee by the lessors does not relieve the lessee from his covenant to pay rent. *Wall* v. *Hinds,* 4 Gray, 256. *Carlton Chambers Co.* v. *Trask,* 261 Mass. 264, 267. There is nothing in *DeFriest* v. *Bradley,* 192 Mass. 346, *Harmon, Wastcoat, Dahl Co.* v. *Star Brewing Co.* 232 Mass. 566, *Shannon* v. *Jacobson,* 262 Mass. 463, and the other cases cited by the defendant at variance with what is here decided. The acts and conduct of the defendant after the execution of the agreement of October 3, 1922, strongly tend to show that it intended to be bound by the provisions of the lease dated February 1, 1887, and subsequent extensions thereof.

In view of all the facts as shown by the evidence and the reasonable inferences to be drawn therefrom the defendant's contention that it never became a lessee of the property but was no more than a licensee, subtenant or assignee of the premises cannot be sustained. The mutual agreement dated October 3, 1922, must be construed as creating a new term to the defendant as lessee to run from the year 1927 to 1947 in accordance with the terms of that agreement. The provisions in the original lease and the subsequent extensions as

modified are incorporated and made a part of the agreement of October 3, 1922. It follows that the consent of the owners as lessors embodied in the assignment of the lease by the defendant to L. P. Hollander Company Inc. dated March 29, 1929, did not relieve the defendant from the covenants contained in the agreement of October 3, 1922, to pay the rent as therein stipulated.

The finding for the plaintiffs and the order for judgment must be affirmed.

*So ordered.*