## 68 BEACON STREET, INC. *vs.* WILLIAM D. SOHIER.

Suffolk.    October 4, 5, 1934. — January 30, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Landlord and Tenant,* Assignment of lease, Construction of lease, Termination of lease. *Contract,* What constitutes, Covenant by assignee of lease. *Corporation,* Transfer of shares. *Restraint on Alienation.*

Where the interest of the lessee in a lease in writing of real estate was assigned to one who thereupon covenanted with the assignor and the lessor to pay the rent and to perform the other obligations of the lessee under the lease, the assignee, by reason of his personal liability to the lessor arising from his covenant, was not relieved of his obligation to pay rent by a purported assignment of the lease subsequently made by him, whether or not it was effectual to transfer his leasehold estate.

A provision of a lease in writing of real estate, in substance that it should "cease, determine and become null and void" if the lessee should "attempt to sell, pledge or dispose of" the lease in violation of a requirement that it should not be assigned without the consent of the lessor, was for the sole benefit of the lessor; and an assignment of the lease by the lessee without the consent of the lessor did not of itself render the lease void, but merely rendered it voidable at the election of the lessor.

A corporation which was the proprietor of a "coöperative apartment house" made a lease for ninety-nine years of an apartment therein to one who was a stockholder in the corporation. Under provisions of its agreement of association printed on the lessee's stock certificate and similar provisions contained in the lease, there could be no transfer of the shares except in conjunction with the lease, and no sale, transfer or pledge of the shares, nor assignment of the lease, without the consent of the corporation, except in the event of the death of the stockholder-lessee, in which event the lease and his shares should pass to his nominee or representative subject to the right of the corporation to purchase them at a certain valuation. The lease was voidable at the election of the corporation upon an attempted transfer by the lessee of his shares or his interest in the lease in violation of such provisions, or, upon certain notice, in the event that the corporation, with the consent of the holders of a certain percentage of its stock, should determine to sell the apartment building. *Held,* that the restrictions upon the transfer of the leasehold interest and of the lessee's shares of stock in the corporation did not violate the rule against restraints on alienation, and were valid.

CONTRACT. Writ dated August 18, 1933.

Count 1 of the declaration was in part as follows:

"That the instrument of assignment [of the lease described in the opinion] to said defendant to which the plaintiff was a party contained a provision that the said assignee does hereby covenant and agree with the said assignor and the said corporation [the plaintiff] that he will henceforth pay the rent and other payments reserved and perform the covenants and agreements on the part of the lessee contained in said lease; that the amount due the plaintiff on July 1, 1933, from the defendant as rent and further payments for the month of July, 1933, in accordance with the aforesaid lease was $201.67; that the defendant has not performed his covenant and owes the plaintiff the sum of $201.67 with interest thereon from the date of the writ."

The action was heard in the Superior Court by *Weed*, J., upon an agreed statement of facts. On July 25, 1930, the plaintiff, the defendant and Addie M. Greenman executed an instrument under seal which contained, among other things, an assignment by Greenman to the defendant of her interest in said lease and one hundred fifty-two shares of the capital stock of the plaintiff, the covenant by the defendant set forth in the declaration, and provisions whereby the plaintiff released Greenman from all her obligations under the lease and assented to the assignment by her. Other material facts are stated in the opinion.

The judge found for the plaintiff in the sum of $220 with interest, the parties having stipulated that if the plaintiff was entitled to recover under Count 1, it should recover the $201.67 sought thereby and $18.33 under other counts. The action was reported for determination by this court.

*E. H. Abbot,* for the defendant.

*R. C. Piper,* for the plaintiff.

CROSBY, J. This is an action to recover rent in accordance with the terms of a written lease. The substituted declaration contains four counts. The case was tried before a judge of the Superior Court upon an agreed statement of facts. The judge ruled that the plaintiff was entitled

to recover upon the first count, and, in accordance with the stipulation outlined in the agreed statement of facts, found for the plaintiff and awarded damages in the sum of $220 with interest thereon from the date of the writ.

The agreed statement of facts contains the following recitals: The plaintiff is a corporation duly organized under the laws of Massachusetts and is now and since September 1, 1926, has been the owner of a nine-story building situated at the corner of Charles Street and Beacon Street, in Boston, which has three stores on the street floor and sixteen apartments on the upper floors. The building was operated by the plaintiff as a coöperative apartment house, so called. Holders of stock in the corporation had the right to occupy apartments and stores. The capital stock of the corporation is thirty-five hundred shares. On September 1, 1926, the plaintiff executed a written lease to one Earle I. Brown of the easterly apartment on the sixth floor of the building, for the term of ninety-nine years commencing September 1, 1926, and on that date Brown owned one hundred fifty-two shares of the capital stock of the plaintiff. The lease was assigned by Brown with the written consent of the plaintiff to the defendant William D. Sohier, and was assigned by the defendant to one Addie M. Greenman and by her on July 25, 1930, to the defendant Sohier. Said one hundred fifty-two shares of the capital stock of the corporation were transferred to the respective assignees of the lease contemporaneously with such several transfers of the lease. Both assignments to the defendant contained the following recital: "SECOND: The said Assignee does hereby covenant and agree with the said Assignor and the said Corporation that he will henceforth pay the rent and other payments reserved, and perform the covenants and agreements on the part of the lessee contained in said lease."

"For the period from March 1, 1927, to and including October 13, 1927, and for the period from July 25, 1930, to June 28, 1933, the defendant was in possession of the premises demised by said lease and performed and observed all the covenants, obligations, and terms of said lease dur-

ing said two periods on the part of the lessee to be performed, including the payment of rent and further payments under the provisions of Paragraphs First and Second of said lease." The defendant on May 22, 1933, delivered to the plaintiff corporation an offer in writing to convey to it said one hundred fifty-two shares and to assign said lease, which offer was not accepted. On June 28, 1933, the defendant assigned said lease to one James M. Burr and indorsed and delivered to him the certificate for one hundred fifty-two shares of the plaintiff corporation. It is agreed that Burr was, and was considered by the directors and by a majority of the stockholders of the plaintiff to be, on June 28, 1933, and down to the date of the writ, without financial responsibility. By letter dated July 13, 1933, the defendant through his attorneys requested the plaintiff to call a special meeting of its stockholders to consider and pass upon the question whether consent to the assignment of the lease and the transfer of said one hundred fifty-two shares of stock to Burr would be granted or refused. At a special meeting of the stockholders of the plaintiff, called by notice dated July 17, 1933, and held on July 26, 1933, at which a quorum was present, it was voted to refuse to consent to the assignment of the lease and the transfer of the one hundred fifty-two shares to Burr.

It is agreed that the defendant has paid all sums due from him as assignee of the lease in question up to and including June 30, 1933, and that written demand has been made upon him for the payment of $201.67, which is the amount payable under the first and second paragraphs of the lease on July 1, 1933, for the month of July, 1933, and that no payment has been made in compliance with such demand, "and that more than thirty days had elapsed after such written demand was made at the time of the commencement of the within suit."

It is the contention of the defendant that the provisions embodied in the lease violate the rule against restraints on alienation, and that the conveyance from the defendant to Burr terminated the interest and liability of the defendant. It is provided in paragraph seventh of the lease, in part,

that the lessee will not without the written consent of the board of directors of the lessor "first obtained in each case, mortgage or pledge this lease or underlet the demised premises or any part thereof." It is provided in the ninth paragraph, "That the within lease shall cease, determine and become null and void upon the happening of either or all of the following contingencies: (a) In case at any time during the term of this lease the Lessee shall attempt to sell, pledge or dispose of said shares of capital stock or any part thereof or this lease otherwise than in accordance with the provisions of the agreement of association, which said provision is stamped upon the certificate of said stock and is hereby made a part of this lease and reads as follows: This stock is continuously pledged to the company for the payment of any obligation to the company of the holder of said stock or of any occupant or lessee under said stockholder's proprietary lease and will not be transferred except upon such payment. No sale or transfer, or pledge, of said stock and no assignment of said proprietary lease shall be made without the written consent of the Board of Directors of the Company" except as provided in case of the death of a stockholder and lessee. In the event of the death of the lessee, his lease and the stock connected therewith were to pass to the person designated in writing by him or his representative, subject to the power of the corporation by its board of directors to purchase the stock and the lease at a valuation to be determined by arbitrators. The transfer of the stock was subject to the same restrictions as the transfer of the lease, and there could be no transfer of the stock except in conjunction with the proprietary lease in the manner thereinbefore provided. (b) "In case at any time hereafter the Lessor shall determine, with the written consent of the holders of eighty-seven and one-half . . . per cent, in amount of its outstanding capital stock, to sell the property of the Lessor in which the apartment hereby leased shall be, then and in such event this lease and all right and estate of the Lessee thereunder shall at the option of the Lessor terminate after the receipt of thirty . . . days' notice of the Lessor's determination aforesaid

to sell and of the aforesaid consent of eighty-seven and one-half . . . per cent, of the stockholders thereto, and upon or prior to the expiration of thirty . . . days after receipt of such notice the Lessee shall quit and surrender up possession of said premises and this lease shall thereupon cease and determine."

The defendant's first contention is that as assignee of the lease he could terminate his liability on the covenants by an assignment. An assignee of a lease receives the benefit and assumes the burden of covenants running with the land. *Torrey* v. *Wallis*, 3 Cush. 442. *Kirby* v. *Goldman*, 270 Mass. 444, and cases cited at page 447. *Kacavas* v. *Toothacker*, 278 Mass. 302. This liability depends, however, on privity of estate and continues so long as the assignee holds the estate assigned to him. At common law an assignee of a lease can escape liability based on privity of estate by an effectual assignment of the lease to another. *Patten* v. *Deshon*, 1 Gray, 325. *Mason* v. *Smith*, 131 Mass. 510, 512. *Kirby* v. *Goldman*, 270 Mass. 444, 447. The general rule above stated is not applicable to the case at bar because the defendant executed as a part of the instrument of assignment to him from Greenman a covenant with his assignor and the plaintiff corporation. By its terms the defendant bound himself to perform all the covenants of the lease, and specifically agreed to pay the rent reserved. His liabilities on these covenants are personal, based upon privity of contract as distinguished from privity of estate. Under these covenants he cannot escape liability by an assignment of his estate, any more than any contractual duty can be avoided by the unilateral act of one of the parties. The defendant's contractual liability on the covenant remains no matter how valid the transfer of his interest may be in the demised premises. *Taylor* v. *Kennedy*, 228 Mass. 390, 392. *Carlton Chambers Co.* v. *Trask*, 261 Mass. 264, 267. *Talbot* v. *Rednalloh Co.* 283 Mass. 225, 235. The issue whether the assignment by the defendant to Burr was effectual to transfer the defendant's estate as lessee is not material in this action, which is brought on the defendant's covenant to pay rent. Whether

this assignment was effectual to transfer the defendant's estate in the lease notwithstanding the covenant and condition against assigning is also not material in this action as the defendant is liable on his covenant to pay rent in accordance with its terms.

The defendant contends that the lease was terminated as a result of his assignment to Burr by virtue of the ninth clause in the lease which provides that the lease "shall cease, determine and become null and. void," upon the happening of either of two contingencies, one of which is the attempt by the lessee to sell, pledge, or dispose of the lease or his shares of stock. It is plain that this proviso, following as it does the grant of a definite term, is not a conditional limitation. Similar provisions in leases are not uncommon, especially when coupled with a right of reëntry. They have uniformly been construed as having been placed in the lease for the benefit of the lessor. It is wholly at his election whether he shall avail himself of the breach as a cause of forfeiture or not. *Bartlett* v. *Greenleaf*, 11 Gray, 98. *Saxeney* v. *Panis*, 239 Mass. 207, 210. It follows that the defendant did not terminate the lease by his violation of the condition contained in the ninth clause.

It is the contention of the defendant that the provisions in the lease restricting assignment violate the rule against restraints on alienation and are a bar to recovery in this action. The seventh paragraph in the original lease provides that the lessee will not, without the written consent of the board of directors of the lessor first obtained in each case, mortgage or pledge the lease or underlet the demised premises, or any part thereof. The defendant also contends· that the lease is invalid because of the ninth paragraph, which provides that no sale or transfer or pledge of· the stock, or assignment of the lease, shall be made without the written consent of the board of directors of the corporation except as provided in case of death. It is plain that this contention cannot be sustained. The validity of a stipulation in a lease against assignment or subletting has been recognized and upheld for many years. "In 21 Hen. VI 33, pl. 21, it was moved before the judges of the

Common Pleas whether a condition not to alien attached to a lease for years was good, and three judges against one held it good. . . . Since that time the validity of such a condition seems to have been assumed . . . and there is no doubt of its legality." Gray, Restraints on the Alienation of Property (2d ed.) page 89. The rule against restraints on alienation is not violated because an inalienable estate was not created. The corporation as owner of the estate could sell the property at any time and such sale could be authorized by the written consent of the holders of eighty-seven and one half per cent of the capital stock. *Seamans* v. *Gibbs*, 132 Mass. 239. The restraints are for the benefit of the lessees and occupants of apartments in a coöperative apartment house. This conclusion is not at variance with *Eastman Marble Co.* v. *Vermont Marble Co.* 236 Mass. 138, 153, 154. The restrictions are contained in the by-laws of the plaintiff and are printed on the back of each certificate of stock issued by it including the certificate for one hundred fifty-two shares transferred to and owned by the defendant, and are contained in the ninth paragraph of the lease dated September 1, 1926, reciting that no sale, transfer, or pledge of the stock shall be made without the written consent of the board of directors of the company except as provided in case of death. These restrictions are valid and binding upon the defendant.

Restrictions on the transfer of stock by corporations were recognized and authorized by St. 1903, c. 437, § 8 (e), which provided that ". . . the number of shares into which the capital stock is to be divided, and the restrictions, if any, imposed upon their transfer . . . ." This statute is now embodied in G. L. (Ter. Ed.) c. 156, § 6 (f). In *Longyear* v. *Hardman*, 219 Mass. 405, 408, it was said with reference to this statute, "In general . . . restrictions upon such transfer cannot be regarded as contrary to public policy, but must be treated as within the contemplation of the Legislature. . . . No such restrictions can be declared to be unlawful under these circumstances unless palpably unreasonable." Although a restraint on alienation of the stock and a ninety-nine year lease are imposed,

yet such restraint is specifically limited in the case of any owner of the stock and holder of the lease to the life of such owner and holder. By the agreement of July 25, 1930, between the plaintiff, the defendant and Addie M. Greenman, who at that time was the holder of the lease, the defendant agreed with said Greenman and the plaintiff that he would thereafter pay the rent and the other payments stipulated, and would perform the covenants and agreements on the part of the lessee contained in the lease. The defendant was entitled to the rights and was subject to the obligations of the lessee in accordance with the terms of the agreement. *Talbot* v. *Rednalloh Co.* 283 Mass. 225.

As the defendant contracted to pay rent and the other stipulated payments, he is not released from his contract by an assignment of the lease or of his stock. *Way* v. *Reed*, 6 Allen, 364. *Carlton Chambers Co.* v. *Trask*, 261 Mass. 264. *Talbot* v. *Rednalloh Co.* 283 Mass. 225. The original lease was not terminated by the assignment from the defendant to James M. Burr, as the plaintiff did not exercise its option given it under the lease to terminate it in the event of assignment. *Atkins* v. *Chilson*, 9 Met. 52, 62. "There are often provisions in leases for years, that upon default, in some matter, of the lessee, the lease shall be void. Such a provision, however expressed, will be construed a condition, making the lease voidable at the option of the lessor, and not a limitation making it absolutely void. The cases have generally arisen upon default in payment of rent, but the same rule must prevail upon breach of a covenant to assign." Gray, Restraints on the Alienation of Property (2d ed.) page 89, note.

The finding and ruling of the judge of the Superior Court were correct. Judgment is to be entered for the plaintiff on the finding.

*So ordered.*