THE MIDLAND TELEGRAPH COMPANY, Appellee, *vs.* THE NATIONAL TELEGRAPH NEWS COMPANY *et al.*—(THE CHICAGO AND MILWAUKEE TELEGRAPH COMPANY, Appellant.)

*Opinion filed October 26, 1908—Rehearing denied Dec. 2, 1908.*

1. TELEGRAPH COMPANIES—*a telegraph company has power to engage in "ticker" business.* A telegraph and a "ticker" company are both engaged in the business of transmitting intelligence between different points by electricity, and there is not such a difference in the character of the business as renders a lease by the former of the business of the latter *ultra vires* and void.

2. SAME—*the statute requiring foreign corporations to appoint representatives in Illinois excludes telegraph companies.* The statute requiring foreign corporations, before doing business in Illinois, to appoint some representative in Illinois upon whom process can be served, excludes foreign telegraph companies, and hence the failure of a foreign telegraph company to appoint such representative does not avoid a lease of its business nor relieve from liability a corporation guaranteeing the payment of rent.

3. CORPORATIONS—*when guaranty of lease by corporation is not ultra vires.* While a corporation has, generally, no power to guarantee the payment of the debts of its stockholders and directors, yet where such stockholders and directors lease a business not foreign to the business of the corporation and which redounds greatly to its benefit, a guaranty by the corporation of the payment of rent under the lease is not *ultra vires* and void.

4. LEASES—*when assignment of a lease does not release lessee from liability for rent.* Where a lease provides that it may be assigned to a corporation to be thereafter organized but does not provide that such assignment shall release the original lessee from liability for rent, the latter will remain liable for the rent notwithstanding the assignment is made as contemplated.

5. EQUITY—*when a court of equity may allow·a legal claim.*
Where the circuit court has acquired jurisdiction of the parties
and of the assets of a corporation in a receivership proceeding, it
may allow a claim against the corporation for rent due under a
lease guaranteed by the corporation and may order the same paid
out of the assets.

APPEAL from the Branch Appellate Court for the First
District;—heard in that court on appeal from the Circuit
Court of Cook county; the Hon. THOMAS G. WINDES,
Judge, presiding.

TENNEY, COFFEEN, HARDING & SHERMAN, (HORACE
KENT TENNEY, of counsel,) for appellant.

FYFFE & ADCOCK, (EDMUND D. ADCOCK, and CORNE-
LIUS LYNDE, of counsel,) for the Type Telegraph Company.

HOYNE, O'CONNOR & IRWIN, for the Printing Telegraph
News Company.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an appeal from a judgment of the Appellate
Court for the First District affirming a decree of the cir-
cuit court of Cook county in so far as it allowed against
the appellant, the Chicago and Milwaukee Telegraph Com-
pany, a claim for rent in favor of the Printing Telegraph
News Company for the sum of $3907.50 and a claim for
rent in favor of the Type Telegraph Company for $4772.39.

It appears from the record that the Chicago and Mil-
waukee Telegraph Company was engaged in conducting a
telegraph business between the cities of Chicago and Mil-
waukee and other points, with its office in the city of Chi-
cago; that the Printing Telegraph News Company and the
Type Telegraph Company were each engaged in carrying
on what is known as the "ticker" business in the city of Chi-
cago; that July 24, 1900, the Chicago and Milwaukee Tel-
egraph Company leased, for the annual rental of $6000, for

the period of twenty years, the property and business of the Printing Telegraph News Company, and that on August 1, 1900, L. M. Martin, W. R. Stewart, Jr. and F. E. Crawford leased, for an annual rental of $2000, for the period of twenty years, the business of the Type Telegraph Company; that Martin, Stewart and Crawford were the owners of the stock of the Chicago and Milwaukee Telegraph Company with the exception of a few shares, and that they organized the Midland Telegraph Company and assigned to it all their stock in the Chicago and Milwaukee Telegraph Company in consideration of the issue to them of the stock of the Midland Telegraph Company; that the Midland Telegraph Company issued its bonds for the sum of $50,000, and hypothecated the stock of the Chicago and Milwaukee Telegraph Company, which had been assigned to it by Martin, Stewart and Crawford, to secure the payment of said bonds; that Martin, Stewart and Crawford also organized the National Telegraph News Company, of which they were the stockholders, and thereupon the Chicago and Milwaukee Telegraph Company assigned to the National Telegraph News Company the lease to it from the Printing Telegraph News Company, and Martin, Stewart and Crawford assigned to the National Telegraph News Company the lease to them from the Type Telegraph Company, and caused the payment of the rent of $2000 per annum agreed to be paid by them, to be guaranteed by the Chicago and Milwaukee Telegraph Company. The property and business of the Printing Telegraph News Company and the property and business of the Type Telegraph Company were thereupon taken possession of by the Chicago and Milwaukee Telegraph Company and the National Telegraph News Company, and the business formerly carried on by the Chicago and Milwaukee Telegraph Company, the Printing Telegraph News Company and the Type Telegraph Company was thereafter carried on by Martin, Stewart and Crawford in the names of the Chicago and Milwaukee Tel-

egraph Company and the National Telegraph News Company. Thereafter the Midland Telegraph Company filed a bill in the circuit court of Cook county for the appointment of a receiver of the Chicago and Milwaukee Telegraph Company and the National Telegraph News Company, alleging, among other things, that said corporations had received the proceeds of the bonds of the Midland Telegraph Company which had been issued and sold by said corporation, and the Hibernian Banking Association was appointed receiver and took possession of the business and assets of the Chicago and Milwaukee Telegraph Company and the National Telegraph News Company, which included the business and property of the Printing Telegraph News Company and the Type Telegraph Company. The claims allowed against the Chicago and Milwaukee Telegraph Company in favor of the Printing Telegraph News Company and the Type Telegraph Company, respectively, were for rent upon the leases made by said corporations bearing date, respectively, July 24 and August 1, 1900. The Chicago and Milwaukee Telegraph Company was being held liable for said rent on the ground that said corporation was the original lessee in the lease to it by the Printing Telegraph News Company and the guarantor upon the lease made to Martin, Stewart and Crawford by the Type Telegraph Company, both of which leases had been assigned to the National Telegraph News Company.

While several of the contentions of the appellant apply to the claims of both the Printing Telegraph News Company and the Type Telegraph Company, other contentions apply to said claims severally. We will therefore take up the appellant's contentions in what we deem their logical order and dispose of them.

It is first contended that the Chicago and Milwaukee Telegraph Company, being organized as a telegraph company, did not have the power to engage in the ticker business, and that for that reason its lease with the Printing

Telegraph News Company, whereby it leased the property and took over the business of that corporation for a period of twenty years, was *ultra vires* and void; and for the same reason it did not have the power to guarantee the payment of the rent reserved in the lease from the Type Telegraph News Company to Martin, Stewart and Crawford, and that its guaranty was therefore *ultra vires* and void. The Chicago and Milwaukee Telegraph Company had the corporate power to install, and it installed, a system of telegraph wires and instruments, whereby it transmitted, by means of electricity, messages from the city of Chicago to the city of Milwaukee and other points, for its patrons, in the usual way that telegraph messages are sent, while the Printing Telegraph News Company and the Type Telegraph Company each had the corporate power to install, and each installed, a system of wires and instruments, and transmitted, by means of electricity, to their customers sporting news and grain market and board of trade quotations and other information which they had collected, which was received by their customers in their respective offices by means of an instrument called a "ticker," which printed the information transmitted, in typewriting, as it was received in the office of the customer, for the information of such customer. It is apparent, we think, that the Chicago and Milwaukee Telegraph Company, the Printing Telegraph News Company and the Type Telegraph Company were each engaged in transmitting intelligence between distant points by electricity, and the transmitting of intelligence by electricity between different points would appear to be a practical, if not a strictly scientific, definition of the electric telegraph. We think it clear, therefore, that each of said corporations was engaged in the telegraph business, and that there was no such difference between the business authorized to be carried on by the Chicago and Milwaukee Telegraph Company and the business authorized to be carried on by the Printing Telegraph News Company and the Type Tele-

graph Company that the Chicago and Milwaukee Telegraph Company could not lease the property and business of the Printing Telegraph News Company or guarantee the rent to become due the Type Telegraph Company upon the lease made to Martin, Stewart and Crawford by that corporation, and are therefore of the opinion that the contention that the action of the Chicago and Milwaukee Telegraph Company in entering into the lease with the Printing Telegraph News Company, and the guaranty by said telegraph company of the payment of said rent to the Type Telegraph Company, were invalid and *ultra vires* and void, cannot be sustained.

It is next contended that the guaranty of the payment of said rent to the Type Telegraph Company was *ultra vires* and void, as the Chicago and Milwaukee Telegraph Company had no power to guarantee the debt of Martin, Stewart and Crawford to said Type Telegraph Company. It is undoubtedly true that a corporation generally has no power to guarantee the payment of the debts of its stockholders or directors. If, however, the debt which it guarantees is a debt the payment of which will redound to the financial benefit of the corporation signing the guaranty, it may be a valid and enforcible obligation against the corporation making the guaranty. A corporation may, for the purpose of advancing the objects and purposes for which it was created, do many acts which, except for their bearing upon the express powers of the corporation, would be *ultra vires*. (*Kraft* v. *West Side Brewery Co.* 219 Ill. 205.) And in exercising powers conferred by its charter a corporation may adopt any proper and convenient means tending directly to their accomplishment and not amounting to the transaction of a separate, unauthorized business. (*Best Brewing Co.* v. *Klassen,* 185 Ill. 37.) It is apparent, we think, that the business of the Chicago and Milwaukee Telegraph Company was not entirely foreign to the business being carried on by the Printing Telegraph News Company or the Type

Telegraph Company, and that its business was greatly extended and increased ·by obtaining, as it did, through the National Telegraph News Company, the possession and control of the property and business of the Printing Telegraph News Company and the Type Telegraph Company. We think, therefore, its guaranty of the rent agreed to be paid by Martin, Stewart and Crawford to the Type Telegraph Company was not *ultra vires* and void.

It is also contended that there can be no recovery upon said guaranty against said Chicago and Milwaukee Telegraph Company, as it is said the Type Telegraph Company was a foreign corporation, and that it had not complied with the law of this State as to foreign corporations doing business in this State at the time it executed the said lease to .Martin, Stewart and Crawford, and that the lease was therefore void. The statute, (Hurd's Stat. 1903, chap. 32, secs. 67*b*, 67*c*, 67*d*,) which provides that a foreign corporation shall not do business in this State until it has designated some person in the State upon whom process can be served as its agent or representative, does not "apply to railroads or telegraph companies which have heretofore built their lines of railroad into or through this State or to insurance, banking or loaning companies." It is apparent that telegraph companies are not, as a part of their corporate powers, authorized to build railroad lines. We think, therefore, the true construction of said section is, that the statute does not require a foreign telegraph company to appoint such agent or representative in this State before it can do business in the State,—in other words, that the statute must be so construed as to exempt foreign telegraph, insurance, banking and loaning companies from appointing agents or representatives in this State upon whom process can be served; and the fact that the Type Telegraph Company had not designated such an agent or representative did not avoid said lease or thereby release said Chicago and Milwaukee Telegraph Company from liability upon its

guaranty of the payment of the rent due the Type Telegraph Company.

It is also urged that the assignment of the rents from the Printing Telegraph News Company to the National Telegraph News Company released said Chicago and Milwaukee Telegraph Company from its liability upon said lease. The lease expressly provides that it might be assigned to a corporation thereafter to be organized by Martin, Stewart and Crawford, but did not provide that such assignment should work a release of the liability of the Chicago and Milwaukee Telegraph Company, as lessee in said lease. We are therefore of the opinion that the Chicago and Milwaukee Telegraph Company remained liable for the payment of the rent provided to be paid in the lease from the Printing Telegraph News Company to said Chicago and Milwaukee Telegraph Company after it was assigned to the National Telegraph News Company.

It is further urged that the claim of the Type Telegraph Company is a purely legal claim, and that the cross-bill by which it was brought forward was not germane to the original bill, and that the court erred, for that reason, in allowing said claim. The circuit court had jurisdiction of the parties and of the assets of the Chicago and Milwaukee Telegraph Company through its receiver. We think, therefore, it had the right to allow said claim and order it paid out of the assets of the Chicago and Milwaukee Telegraph Company. *Gunning* v. *Sorg*, 214 Ill. 616.

It is clear from an examination of this record that the organization of the Midland Telegraph Company and the National Telegraph News Company, and the assignment of said leases to the National Telegraph News Company, and the assignment of the stock of the Chicago and Milwaukee Telegraph Company to the Midland Telegraph Company, and the issue of the bonds of the last named corporation and the hypothecation of the stock of the Chicago and Milwaukee Telegraph Company to secure the payment of said

bonds, were brought about through the manipulations of Martin, Stewart and Crawford, for the purpose of raising funds and to increase the extent of the business of the Chicago and Milwaukee Telegraph Company, of which they were the owners; that while the Chicago and Milwaukee Telegraph Company was ostensibly engaged in the telegraph business and the National Telegraph News Company was ostensibly engaged in the ticker business, the stockholders and managers of said corporations were the same; that the offices of said Chicago and Milwaukee Telegraph Company and the National Telegraph News Company were at the same place; that the people in the employ of said corporations did not know by which corporation they were employed; that the funds of said corporations were often commingled, and that said National Telegraph News Company and said Midland Telegraph Company were but means used by said Martin, Stewart and Crawford to further the venture in high finance in which they were engaged; that there was no substance to any of said corporations except the Chicago and Milwaukee Telegraph Company, which appears to have had some property and business, and which was the corporation with which and upon the strength of whose financial responsibility the leases in question were made; and while many technical objections have been made by the Chicago and Milwaukee Telegraph Company to the payment by it of the amount due upon said leases, (which objections, under other circumstances, might have some force,) in view of the numerous corporations which have been organized and the manipulations of the stock of said corporations by said Martin, Stewart and Crawford, the Chicago and Milwaukee Telegraph Company, which seems to have benefited by said manipulations, was properly held in this proceeding liable for the rent due upon said leases.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*