### BUCHSER *v.* BUCHSER.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 641.   Submitted November 3, 1913.—Decided November 17, 1913.

Unless the statutes of the United States control, this court follows the state court as to whether real estate is separate or community property.

Until the title of an entryman is completed the laws of the United States control; but after completion the land becomes immediately subject to state legislation. *McCune* v. *Essig*, 199 U. S. 382.

Even if the United States could impress a peculiar character upon land within a State after parting with it, it would only be by clearly expressing it in a statute, which has not been done. *Wright* v. *Morgan*, 191 U. S. 55.

A state law that after completion of the entryman's title the property becomes community property is not like a contract for sale to a third party; but is consistent, and not in conflict, with the provisions of the act of March 3, 1891, prohibiting alienation of homestead entries.

The highest court of the State of Washington having held that immediately on completion of title of an entryman the property becomes community property, and that on the death of the wife after such completion her children have an interest therein, this court follows that decision.

202 Fed. Rep. 854; 121 C. C. A. 212, affirmed.

THE facts, which involve the construction and application of statutes of the State of Washington relating

to property acquired by an entryman under the laws of the United States, are stated in the opinion.

*Mr. F. M. Dudley, Mr. W. E. Cullen* and *Mr. David Herman* for appellant:

The lower court erred in holding that the State of Washington has uniformly held grants of the Federal Government under the homestead laws to be the community property of the entryman and his wife. *Bolton* v. *La Camas Water Co.*, 10 Washington, 246, held that the homestead was the separate property of the entryman. *Ahern* v. *Ahern*, 31 Washington, 334, holding otherwise, was disapproved in *Hall* v. *Hall*, 41 Washington, 186, and *Cunningham* v. *Krutz*, 41 Washington, 190.

Since the Circuit Court of Appeals rendered its decision herein, the Supreme Court of Washington has held these cases to be out of harmony and irreconcilable. *Teynor* v. *Heible*, 133 Pac. Rep. 1.

To allow the States to ignore Federal land laws, to interpret the grants made by the Federal Government and designate the persons who are the beneficiaries thereof according to their own local laws, brings about the anomalous situation of citizens of the United States holding different rights under grants issued by the Federal Government in pursuance of the same and identical laws, simply because one happens to live in one State and the other in another State. California, also possessing the community property law, has uniformly held that the homestead becomes the sole and separate property of the entryman. *Noe* v. *Cord*, 14 California, 577; *Wilson* v. *Castro*, 31 California, 421; *Wood* v. *Hamilton*, 33 California, 698; *Lake* v. *Lake*, 52 California, 428; *Harris* v. *Harris*, 71 California, 314; *Morgan* v. *Lones*, 80 California, 317.

The State of Washington has been vacillating and under certain conditions holds that the homestead is not the separate property of the entryman, but the com-

munity property of himself and his wife, and that one-half of the property belongs to her or her children, even if they are by a former husband.

The State cannot confiscate one-half of the entryman's grant by calling it the community property as that would be the taking of property without due process of law. If the Federal Government grants the homestead to the entryman himself personally, it becomes his separate property, and not the community property of himself and his wife.

The rights of a grantee from the Federal Government present a Federal question on which the decisions of the Federal courts are controlling, and in the administration of the Federal land laws the community system is unknown. *Phœnix Mining Co.* v. *Scott*, 20 Washington, 48; *Cunningham* v. *Krutz*, 41 Washington, 190; *Hall* v. *Hall*, 41 Washington, 186.

Each of the three cases last cited holds the grant from the Government to be the separate property of the entryman and grantee.

Congress alone has the power to enact laws for the disposition of the lands belonging to the United States. No State can abridge that right nor interfere with the grantee's enjoyment or possession of the lands granted by the Federal Government. *Irvine* v. *Marshall*, 20 How. 558; *Gibson* v. *Chouteau*, 13 Wall. 92.

The Washington enabling act (§ 4) provides that the public lands shall remain subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States.

With the right to dispose of the public lands necessarily goes the right to protect the grants made by the Federal Government.

The wife has no interest in the lands entered by her husband whilst he is living. See §§ 2289, 2290, 2291, United States Comp. Stat. 1901.

A homestead acquired under the laws of the United

States is the sole and separate property of the entryman. Any other conclusion is inconsistent with the clear and explicit provisions of the United States statutes applicable to homestead entries. *Gibson* v. *Chouteau,* 13 Wall. 92; *McCune* v. *Essig,* 199 U. S. 382; *Hall* v. *Hall,* 41 Washington, 186.

*Wilcox* v. *McConnell,* 13 Pet. 496, 516, does not warrant the conclusion that after title has passed from the Federal Government the State can take one-half of the land from the grantee and give it to his wife by simply designating it as community property.

In this case there is no question of descent as the entryman is still living. The fact that the entryman's wife died cannot affect his individual and separate property, nor give the probate court any jurisdiction over the same.

*Mr. Frank T. Post, Mr. B. B. Adams, Mr. John Salisbury* and *Mr. W. W. Zent* for appellees:

It is the settled law of the State of Washington that the property in controversy is community property. *Kromer* v. *Friday,* 10 Washington, 621; *Ahern* v. *Ahern,* 31 Washington, 334; *Cox* v. *Tompkinson,* 39 Washington, 70; *Hall* v. *Hall,* 41 Washington, 186; *Cunningham* v. *Krutz,* 41 Washington, 190; *Kreig* v. *Lewis,* 56 Washington, 196; *Teynor* v. *Heible,* 133 Pac. Rep. 1.

See also the decisions of this court in *Wilcox* v. *McConnel,* 13 Pet. 516; *McCune* v. *Essig,* 199 U. S. 382; *Bernier* v. *Bernier,* 147 U. S. 242.

To reverse the decision of the court below would invite a system of litigation more portentous than our jurisprudence has yet known and upset thousands of titles which depend upon it. Having received this construction for so long a time by the courts, it would seem that if the decisions are wrong the matter should be left to the legislature to correct.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill to quiet title, alleging that the plaintiff, a married man, made entry and acquired title to the land in question under the homestead laws of the United States by patent issued December 17, 1903; that thereafter his wife died, and that the defendants, the children of the marriage, claim an interest in the land. By the laws of the State of Washington, in which the property is situated, it became community property unless the statutes of the United States forbid. *Teynor* v. *Heible,* 133 Pac. Rep. 1. On that point we follow the Washington decisions. There was a demurrer, which was sustained by the District Court; *sub nom. Buchser* v. *Morss,* 196 Fed. Rep. 577, and by the Circuit Court of Appeals, 202 Fed. Rep. 854. 121 C. C. A. 212.

There is no doubt, of course, that until the title is completed the laws of the United States control. *Wadkins* v. *Producers Oil Co.,* 227 U. S. 368. *Bernier* v. *Bernier,* 147 U. S. 242. *Hall* v. *Russell,* 101 U. S. 503. *Gibson* v. *Chouteau,* 13 Wall. 92. But when the title has passed then the land 'like all other property in the State is subject to state legislation.' *Wilcox* v. *Jackson,* 13 Peters, 498, 517. *Irvine* v. *Marshall,* 20 How. 558, 564. *McCune* v. *Essig,* 199 U. S. 382, 390. If the United States could impress a peculiar character upon land within a State after parting with all title to it, at least the clearest expression would be necessary before such a result could be reached. *Wright* v. *Morgan,* 191 U. S. 55, 58. But it has not tried to do anything of the sort.

No one would doubt that this title was subject to the same incidents as any other so far as events subsequent to its acquisition were concerned. See *Wright* v. *Morgan, supra.* It could be lost by adverse occupation for the time prescribed by state law, and in a State that adopted the common law as to dower it would be subject to dower

if the settler subsequently married. The only semblance of .difficulty is due to the coincidence in time of the acquisition of a separate right by the settler and the beginning of a community right in the wife. But this is by no means an extreme illustration of the division of an indivisible instant that is practiced by the law whenever it is necessary. A statute may give a man a right of action against another for causing his death, that accrues to him at the instant that he is *vivus et mortuus. Higgins* v. *Central New England & Western R. R. Co.,* 155 Massachusetts, 176, 179. In the present case the acquisition under the United States law is complete and that law has released its control before the state law lays hold, and, upon grounds in no way connected or interfering with the policy of Congress, brings the community regime into play. The special family relations thus created are. not like contracts with third persons impliedly forbidden by the act of March 3, 1891, c. 561, § 5, 26 Stat. 1097, amending Rev. Stat., § 2290. They are consistent with the policy of the statute which is to enable the settler and his family to secure a home. See § 2291.

*Decree affirmed.*