## KASKEL v. HOLLANDER.
### No. 2859.

Circuit Court of Appeals, First Circuit.

Dec. 15, 1933.

Jacob J. Kaplan, of Boston, Mass. (Arthur E. Whittemore, Charles F. Dunbar, and Nutter, McClennen & Fish, all of Boston, Mass., on the brief), for appellant.

Robert G. Dodge, of Boston, Mass., for appellee.

Before WILSON and MORTON, Circuit Judges, and LETTS, District Judge.

MORTON, Circuit Judge.

The question is whether the defendant is liable for rent on a renewal lease, made in May, 1930, for the term of twenty-one years, covering property on Fifth avenue in New York City. The case was heard on agreed facts. In the court below there was judg-

ment for the defendant; and the plaintiff has appealed.

Max Kaskel owned the real estate in question. In 1909, he leased it to three persons, of whom the defendant was one, for the term of twenty-one years, with the right to renew, at the option of the lessees or their assigns, for two further terms each of twenty-one years. The rent for the original term was $17,500 per year. In case of a renewal, the rent for the future terms was to be either agreed upon or arbitrated. The lease was unassignable during the original term without the assent of the lessor, which, however, was not to be unreasonably withheld. Thereafter it was assignable without such assent.

In 1928, the defendant, Hollander, was the only survivor of the three original lessees, the other two having died. In the spring of that year, he requested Kaskel's assent to an assignment of the lease to a new corporation, which we shall refer to as Hollander Inc., and with which the defendant was at that time in negotiation for the sale of his business. Kaskel refused to assent to the assignment requested. He contended that the lease had, in legal effect, already been assigned without his consent to Hollander & Co., which was then occupying the premises; that the covenant against assignment had thereby been broken; and that he had a right of re-entry. His position, as just stated, clearly appears from the correspondence. His counsel wrote to Hollander's counsel under date April 2, 1928: "The information which you give in your letter makes it perfectly apparent that the provisions of the lease restricting the same against assignment have been breached by the tenant" etc.; and again, under date October 5, 1928, after intervening correspondence in which Mr. Kaskel's position was insisted on, "It is our view that the assignment of this lease (meaning the asserted assignment to Hollander & Co.), being contrary to the agreement and condition, did not vest in the corporation any right to the renewal terms and therefore that the lease *automatically terminates*, if Mr. Kaskel does not see fit to avail himself of the right to terminate prior to that date, due to the breach, *upon the last day of the original term.* * * *" (Italics supplied.) "Mr. Kaskel will not consider himself bound in any respect unless and until the entire matter is concluded by a written agreement covering all points."

Kaskel offered, in effect, to waive this question and assent to the requested assign-

ment on the payment of a satisfactory sum. The defendant and Kaskel, through their representatives, negotiated about the matter, until finally the defendant said that the sum asked by Kaskel was too large and dropped the negotiations. They were, however, turned over to the persons who were contemplating the purchase of the business. These persons arranged with Kaskel that he would waive his claim of existing breach of covenant, would assent to the assignment of the current lease to the new company, Hollander, Inc., and would renew the lease to it, as therein stated, for a payment of $20,000.

This sum was accordingly paid to Kaskel by the new company, or its representatives, and he gave to them in writing the agreement reached. It appears to have been attached to the assignment of the lease, made to the new company by the defendant and the representatives of the original lessees. It recited that: "I Max Kaskel, the lessor within assigned lease * * * in consideration of the covenants of the *assignee* hereinabove contained, (a) do hereby consent in all respects to the above assignment to L. P. Hollander Company Inc., and (b) do hereby agree with L. P. Hollander Company Inc. that, to the best of my knowledge and belief, there is no default of any kind or description existing under said within assigned lease, and (c) *agree that said within assigned lease may be renewed by L. P. Hollander Company Inc.* or any successor of L. P. Hollander Inc. (sic) as tenant under said lease in accordance with the terms thereof. Witness my hand this 29th day of March 1929 Max Kaskel." (Italics supplied.)

At the time when this transaction was completed the original lease still had nearly a year to run. The defendant thereupon sold the Hollander business to the new company and apparently stepped out. A separate instrument of renewal was thereafter made between Kaskel and Hollander, Inc., in which it was recited that the option to renew had been exercised *by Hollander Inc.,* and that the lease was renewed at an annual rental of $36,500. This agreement contains no reservation of rights against Hollander; and he was not a party to it. Hollander. Inc., occupied the premises, paid the rent, and performed the covenants of the lease until February 19, 1932, when it went into bankruptcy. No rent has been paid for the period subsequent to March 1, 1932. In 1932, Max Kaskel conveyed the premises to Rosetta Kaskel, his wife. The plaintiff's contention is that the defendant is liable un-

der the original lease for the rent for the renewal term.

■ On the completion of the assignment with the assent of Kaskel, privity of estate between him and Hollander came to an end, and privity of estate between him and Hollander Inc., was established. This change of estates did not, as a matter of law, release Hollander from his contractual obligations under the lease (Gillette Bros. v. Aristocrat Restaurant, 239 N. Y. 87, 90, 145 N. E. 748), if there was an intention to hold him. The defendant contends (1) that there was a substitution of tenants which released him, and (2) that his obligations under the original lease did not extend into the new term.

■ We are of opinion that the defendant is right on both points. As has been pointed out, Hollander's request for assent to the assignment was refused. He did not participate in the final negotiations by which the assent was obtained; they were carried on directly between the lessor and the proposed assignee. They involved a substantial payment to the lessor which was made, not by Hollander, but by the new company. An agreement in writing relating to the assent and the renewal was made between the lessor and the assignee, and a separate instrument of renewal was made between them at largely increased rent, without any participation or assent by Hollander. There was no reservation of rights against him. Kaskel understood that Hollander was selling out his business to the new company. After the assignment of the lease, Kaskel billed the rent directly to the new company, not to Hollander. It seems to us that the intention was to substitute the new corporation in place of Hollander, and that Hollander was released. In Jones Co. v. Winchester Repeating Arms Co., 61 F.(2d) 774, 775 (C. C. A. 2), Judge Learned Hand said: "The lessor may not safely agree with the lessee and a substitute that the substitute shall come in under a new lease, unless (we may for argument assume), he reserves his rights against the lessee. Certainly if he does not, it is a release of the lessee, and the lessor can look only to the substitute." The decisions relied on by the plaintiff presented nothing like the facts before us.

■ As to the second point: Even if it be assumed that there was no intention to release Hollander from his obligations under the original lease, we are clearly of opinion, for reasons above suggested, that Hollander's liability under the lease did not extend, through the controversy over the assignment and renewal and the settlement of it, into the new term. The renewal did not rest solely on the original lease, but on that lease, plus the agreement between Kaskel and Hollander Inc., which is expressly referred to in the renewal instrument, and which rested on a new consideration.

We ought perhaps to add that we have great doubt whether the obligations of the original lessee on a lease of this character, assigned during the original term, would continue into the renewal term, which he did not request, and the rent for which was fixed by an agreement or arbitration in which he did not participate. No decision going so far has come to our attention. New York Business Bldgs. Corp. v. James McCutcheon & Co., 229 App. Div. 681, 243 N. Y. S. 255, Id., 257 N. Y. 554, 178 N. E. 792, relied on by the plaintiff, did not present that situation. It is, however, unnecessary to decide the point.

The judgment of the District Court is affirmed, with costs to the appellee.