**S. S. KRESGE CO. v. SEARS et al.**

**Eq. No. 4249.**

District Court, D. Massachusetts.
June 22, 1936.

Hale & Dorr and J. N. Welch, both of Boston, Mass., for plaintiff.

Robert G. Dodge and T. M. Reynolds, both of Boston, Mass., for defendants.

BREWSTER, District Judge.

This is a petition for a declaratory judgment, brought under the provisions of the federal Declaratory Judgment Act (28 U.S.C.A. § 400). The petitioner is the lessee, and the respondents are the lessors of certain real estate, located on the corner of Tremont and Bromfield streets, in the city of Boston, under an indenture dated June 10, 1921, as modified by supplemental indenture dated November 4, 1921. Copies of these indentures are attached to the pleadings of the petitioner. The original lease was for a term of 50 years, with a right to a further term of 49 years at the option of the lessee. The lease provides that the lessee may, upon depositing suitable security, tear down existing buildings, and erect in their place a building of first-class construction, according to plans to be approved by the lessors. As to assignments and subleases, the original lease contains the following provisions:

"The lessee covenants and agrees not to assign this lease without the lessor's written consent until after the completion of the new building or buildings hereinabove provided to be erected by it, nor until the premises, including such new buildings, shall be free and discharged of all liens, claims, and charges incurred in or by or during the construction of said building, but thereafter it may assign without such assent. The lessee may from time to time sub-let the whole or any part of said demised premises."

The lease provides that the lessee's option to a further term of 49 years shall be exercised by the lessee only in case it has erected a building of first-class construction during the term of the lease. The lease contains an express covenant to pay a fixed sum as rental for the first 50 years and, if the term is renewed, to pay rental for the remaining 49 years at a rate to be determined by arbitrators in a manner provided for in the lease.

The supplementary agreement entered into November 4, 1921, gives the lessee the privilege of erecting, in its discretion, a building of second-class construction, instead of the building of first-class construction specified in the original lease. But in case this is done, it is provided that the lessee shall not have the right to assign the lease without the consent of the lessor, nor have an option for a renewal of the lease, unless a building of first-class construction is later built.

The lessee entered under the lease, tore down the old buildings, and, in fact, erected a building of first-class construction. The parties have stipulated that the cost of erecting a first-class building was approximately $75,000 in excess of what a building of second-class construction would have cost.

In August, 1935, the petitioner notified the respondents of a proposed assignment of the lease. The parties have stipulated that the proposed assignee is without assets, and that the sole purpose of the petitioner in making the assignment is to terminate its liability upon the covenants of the lease. The petitioner contends that it has a right to terminate its liability in this manner, while the respondents on the other hand have notified the petitioner that

they propose to continue to look to it for the performance of all covenants contained in the lease. An actual controversy is thus set forth, and the petitioner now seeks a declaration of its right to terminate its liability under this lease by an assignment.

At the outset it should be remarked that if, by the terms of the lease, the petitioner does not remain liable on personal covenants after a bona fide assignment, the fact that an assignment is made to a person of no financial responsibility is immaterial. Donaldson v. Strong, 195 Mass. 429, 81 N.E. 267. This is subject, of course, to the provision that a real transfer must take place. Harmon, Wastcoat, Dahl Co. v. Star Brewing Co., 232 Mass. 566, 122 N.E. 753.

Where a lessee makes an express covenant to pay rent, he cannot escape liability by assigning the remainder of the term. He remains liable on his original covenants, although the assignee may also become liable on covenants running with the land. Fletcher v. McFarlane, 12 Mass. 43; Wall v. Hinds, 4 Gray (Mass.) 256, 64 Am.Dec. 64; Greenleaf v. Allen, 127 Mass. 248; Connolly v. Rogers (Mass.) 197 N.E. 483, 100 A.L.R. 552.

If the lease contains a covenant not to assign without the assent of the landlord, the fact that an assignment is later made with the assent of the lessor, or that the lessor has accepted rent from the assignee, is not sufficient to release the lessee from his personal covenants. It must be shown that the landlord at the time of the assignment unconditionally accepted the assignee as his new tenant. Johnson v. Stone, 215 Mass. 219, 102 N.E. 366; Carlton Chambers Co. v. Trask, 261 Mass. 264, 158 N.E. 786; Talbot v. Rednalloh Co., 283 Mass. 225, 186 N.E. 273; Hamlen v. Rednalloh Co. (Mass.) 197 N.E. 149, 99 A.L.R. 1230.

The lessor may, no doubt, expressly or impliedly release the original lessee at the time of assenting to the assignment, but such intent must be clearly shown. Way v. Reed, 6 Allen (Mass.) 364; Grommes v. St. Paul Trust Co., 147 Ill. 634, 35 N.E. 820, 37 Am.St.Rep. 248.

In Way v. Reed, supra, it is said:

"Doubtless it is competent for a lessor to enter into such stipulations with an assignee as to accept him as sole tenant, and to absolve the original lessee from his contracts. But an intent to create a new contract and to annul the lease as against the original lessee must be clearly shown; otherwise the rule of law by which the lessee and the assignee will both be held liable to the lessor must prevail."

In the present case, it is contended that the petitioner will be released by an assignment because of provisions found in the original lease. It is apparent that an express consent to a future assignment, contained in the same instrument as an unconditional covenant to pay rent for the entire term, can at best have no greater effect than consent given at the time of the assignment. As stated in Tiffany on Landlord and Tenant, § 157 (2):

"The fact that the landlord, either expressly or impliedly, consents to such assignment, as when he gives his consent to the assignment in accordance with a requirement in the lease of such consent, or he accepts rent from the assignee, does not affect the lessee's continuing liability on his stipulations. And an express consent in the instrument of lease to the assignment of the leasehold has no greater effect."

It has been held, therefore, that where a lease, although containing a covenant against assignment without the consent of the lessor, also contains a provision that the lessee may assign without such permission under certain circumstances, the lessee is not released from his covenants after such an assignment is actually made. Halbe v. Adams, 172 App.Div. 186, 158 N.Y.S. 380, 382; Midland Telegraph Co. v. National Telegraph News Co., 236 Ill. 476, 86 N.E. 107; Kanawha-Gauley Coal & Coke Co. v. Sharp, 73 W.Va. 427, 80 S.E. 781, 52 L.R.A. (N.S.) 968, Ann.Cas.1916E, 786; Rector v. Hartford Deposit Co., 190 Ill. 380, 60 N.E. 528.

In Halbe v. Adams, supra, the lease contained a provision, in addition to the usual covenant against assignment without the consent of the lessor, that the lessee might assign to a corporation about to be formed to carry on the lessee's business. The court held that this provision did not show an intention to release the original lessee when such an assignment was made. The court said:

"It has long been settled that neither the consent of a landlord to the assignment of a lease, nor the acceptance of rent from an assignee of the original tenant, releases the latter from his covenant to pay the rent. * * * Something more than this must be shown. It must appear, in

addition thereto, that there was an express agreement by which the lessee was released from his covenant to pay the rent, or facts shown from which such agreement can be implied."

No express agreement to release the lessee appears in this lease. It is clear, therefore, that unless some facts are shown, in addition to assent to an assignment after completing a new building, from which such an agreement can be clearly implied, the petitioner is not entitled to the judgment which he seeks.

■■■ It is contended that the fact that the lessee may sublet at any time, without obtaining the consent of the lessor, is such an additional fact. The petitioner argues that since a conveyance of its entire interest in the leased premises for all but the last hour of the term would still be a sublease, not requiring the consent of the lessor, there is no practical difference, from an economic standpoint, between an assignment and a sublease, and, therefore, that the difference in treatment of the two, found in the present lease, can only be explained by the assumption that it was the intention of the parties that an assignment under this lease would release the lessee from further liability upon his personal covenants. I am of the opinion, however, that the addition of a right to sublet without the consent of the lessor, under these circumstances, is not sufficient to differentiate this case from those above referred to. Such a right might have been included in this lease for too many other equally plausible reasons to attach to the fact of its inclusion the unequivocal effect for which the petitioner contends.

The petitioner, a chain store, was taking over an entire business building in order to secure a favorable location for one of its units. Since the success of such a venture would be dependent upon the ability of the lessee to sublet the unused portions of the building, it is quite improbable that the petitioner would have been willing to assume the obligations of any lease which did not expressly give it a free hand in selecting subtenants. Had the lease not otherwise provided, the lessee could at any time have lawfully assigned its leasehold interest to whomever it pleased. The fact that the parties agreed that this right, prior to the erection of the building, should not be exercised without the assent of the lessor, does not, in my opinion, indicate an intention that an assignment afterwards would operate to relieve the lessee from its obligations on its covenants.

As previously stated, the right to assign without the consent of the lessor, and the right to a renewal are both made dependent upon the erection of a building of first class construction by the lessee. It has been stipulated that the extra cost of a first-class building was approximately $75,000. The petitioner contends that unless it has purchased the right to escape liability on its covenants by the expenditure of this money, it in effect received nothing in return for $75,000 except the right to a renewal of a 50-year lease for another 49 years. It is needless to point out that the petitioner presumably got a better building for its extra expenditure along with the assurance of an extra 49 years to enjoy possession of it. In any event, there is nothing in the lease to show that the parties considered that a right to assign without further liability was to be an equivalent for the construction of a first class building. Such an intention is negatived by the fact that the provision as to assignment is first found in the original lease, by which the only alternative to the construction of a first-class building is for the lessee to leave the old buildings standing. The right to construct a second-class building was conferred by the supplemental agreement of November 4, 1921.

The petitioner contends that the language of this lease is such that if the lessee is to be held liable, after an assignment, then all subsequent assignees must remain liable on all the covenants of the lease for the entire term, thereby making it virtually impossible for the lessee to assign his lease, with or without the consent of the lessor, for purposes of security.

The petitioner bases his argument as to the personal liability of all subsequent assignees on the following provisions of the lease (p. 10):

"It is agreed that all the covenants, agreements, and engagements hereunder shall be construed as covenants running with the land, and all rights given hereby to, and obligations hereby imposed upon the lessors and lessee shall be construed as accruing to, and binding upon the assigns of the lessee and the assigns of the lessors respectively."

■■■ An assignment of a lease may unquestionably take place under such condi-

tions that the assignee will become personally bound to the lessor. It is obvious that in such cases as 68 Beacon St. v. Sohier (1935) 289 Mass. 354, 194 N.E. 303, and Zinwell Co. v. Ilkovitz, 83 Misc. 42, 144 N.Y.S. 815, cited by the petitioner, where the lessor joins in the assignment, and the assignment is either under seal or personal assumption of the obligations of the lease is made consideration for the assent of the lessor to the assignment, the assignee will remain liable after a reassignment.

Personal liability on the covenants may also arise, without the landlord becoming a party to the assignment. As stated in Tiffany on Landlord and Tenant, § 158(n):

"A reassignment by the assignee does not terminate his liability if, on originally taking an assignment of the leasehold he expressly agreed to perform the covenants of the lease, though such an agreement, if made with the assignor alone, can be enforced by the landlord only in jurisdictions where a third person is entitled to sue on a contract made for his benefit."

An attempt on the part of the lessor to obtain the personal liability of subsequent assignees of the lease as well as of the original lessee does not go far to create an inference that the lessor intended to look to the land alone for the performance of covenants.

■ The lease also contained the following provision (p. 7):

"All legal and sufficient instruments of assignment and acceptance as intended to be made, and made, shall, at least ten days prior to their execution, be placed in the hands of the lessors for inspection (not hereby intending approval or disapproval), and such instruments after execution and delivery shall be promptly recorded by the lessee in the proper recorder's office."

Whether the landlord has any rights in a promise of the assignee running to the original lessee depends upon the law of Massachusetts. Adams v. Shirk (C.C.A.) 117 F. 801. Under that law the landlord might perhaps have some equitable rights against the assignee arising from contracts between the lessee and the assignee made for his benefit, although he would have no right to sue at law in Massachusetts. Forbes v. Thorpe, 209 Mass. 570, 95 N.E. 955; Gillis v. Bonelli-Adams Co., 284 Mass. 176, 187 N.E. 535.

It is quite clear that the words of the lease "all legal and sufficient instruments of assignment and acceptance as intended to be made, shall," etc., cannot be taken to require a three-party agreement at the time of the assignment so as to bring the case within the cases cited by the petitioner. On the contrary, after the new building is built assignment may be without the consent of the lessor. In fact, the words do not seem to require an instrument of acceptance, but merely provide that certain things shall be done if any such instrument is intended by the parties to the assignment.

■ The provisions quoted from page 10 merely have the effect of making certain covenants run with the land. If the assignee accepts a lease, the assignee becomes liable upon covenants running with the land, and if the lessee is forced to pay the lessor for a breach of such covenants, he has an action against the assignee, but this is in the nature of the surety's right and does not arise until the lessee has actually been forced to pay. Farrington v. Kimball, 126 Mass. 313, 30 Am.Rep. 680. Such a promise, being implied in law, could give the lessor no rights.

■ Nor is the fact that this lease contains an option for a renewal at a rate to be determined by arbitration sufficient to show that the lessee is not to remain liable after an assignment.

The case of Worthington v. Hewes & McCann, 19 Ohio St. 66, relied upon by the petitioner, is easily distinguishable. There the lease was for 99 years, renewable forever, with provisions for redetermining the rent every 15 years. The court reached its conclusion upon the nature of the estate granted. It regarded the lease as creating an estate in fee rather than a leasehold estate. While in form the assignment by the so-called lessee was an assignment of a lease, in fact it was a sale of land subject to the payment of money under the name of rent. In the later Ohio case of Taylor v. DeBus, 31 Ohio St. 468, the court said, regarding the Worthington Case, that it must be limited to a lease like the one then before the court in which the "force of the express covenant to pay rent, by construction of the whole instrument, was modified and limited by other covenants."

In the case at bar there is no opportunity to regard the lease as passing anything other than a leasehold estate; consequently the lease and the assignment thereof re-

main subject to all the legal incidents of a lease and assignment.

A decree may be entered establishing and declaring rights of the petitioner to assign said lease to whomever it may choose, but any such assignment shall not operate to release the petitioner from its liability upon its covenants in said lease.