### S. S. KRESGE CO. v. SEARS et al.*
### No. 3178.

Circuit Court of Appeals, First Circuit.

Dec. 18, 1936.

*Writ of certiorari denied 57 S. Ct. 512, 81 L. Ed. ——.

136

MORTON, Circuit Judge, dissenting.

Hale & Dorr and Joseph N. Welch, all of Boston, Mass. (Richard W. Hale, David Burstein, and Raymond B. Roberts, all of Boston, Mass., on the brief), for appellant.

Robert G. Dodge, of Boston, Mass. (Thomas M. Reynolds and George M. Naylor, Jr., both of Boston, Mass., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a decision of the District Court for the District of Massachusetts on a petition for a declaratory judgment under section 400, title 28 U.S.C.A., which provides as follows:

"In cases of actual controversy except with respect to Federal taxes the courts of the United States shall have power upon petition, declaration, complaint, or other appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such."

The petitioner is a lessee under a lease of valuable real estate on the corner of Tremont and Bromfield streets in Boston, Mass., executed on June 10, 1921, between the appellant and the appellees, and amended by a supplemental indenture on November 4, 1921. The petitioner seeks a declaration in its favor that it is entitled by assigning the lease to relieve itself of all further liability thereunder. The District Court ruled that the petitioner is not so entitled, and a final decree was entered therein declaring "that the petitioner has the right to assign the lease referred to in the petition, but any such assignment will not operate to release the petitioner from its liability upon its covenants in said lease."

The lease is for the term of fifty years from January 1, 1922, with the right on the part of the lessee upon certain conditions to an additional term of forty-nine years.

With respect to an assignment the original lease contains the following provisions:

"The lessee covenants and agrees not to assign this lease without the lessors' written consent until after the completion of the new building or buildings hereinabove provided to be erected by it, nor until the premises, including such new buildings, shall be free and discharged of all liens, claims, and charges incurred in or by or during the construction of said building, but thereafter it may assign without such assent. The lessee may from time to time sub-let the whole or any part of said demised premises.

"All legal and sufficient instruments of assignment and acceptance as intended to be made, and made, shall, at least ten days prior to their execution, be placed in the hands of the lessors for inspection (not hereby intending approval or disapproval), and such instruments after execution and delivery shall be promptly recorded by the lessee in the proper recorder's office."

By the supplemental indenture of November 4, 1921, it was further provided that:

"* * * The lessee covenants that if it elects to pull down and remove the buildings now standing as aforesaid, it will erect either a building or buildings of fireproof and first-class construction provided for in said previous indenture or a building of second-class construction as herein provided. If, however, the lessee erects a building of second-class construction, it shall not be entitled to a renewal of its lease for a further term of forty-nine years as in said previous indenture provided * * *; nor shall the lessee assign its lease without the lessors' written consent until it has erected a building of fireproof and first-class construction in accordance with the terms of said previous indenture."

The lessee erected a fireproof building of first-class construction.

The petitioner evidently has found under present conditions that the lease has become burdensome, and on August 26, 1935, the petitioner's attorney sent the respondents a letter stating that the plaintiff had decided "to exercise its right to assign the lease and thereby be relieved from further liability in respect to it," and inclosed a draft of a proposed assignment to one Louis J. Binda.

The respondents thereupon sent a reply to the petitioner on September 3, 1935, in which they recognized the right of the petitioner to make an assignment, but stated that they should continue to look to the petitioner for the performance of all the covenants of the lease.

By a stipulation entered into between the parties, it was agreed that Binda, the proposed assignee, is without assets, and that the sole purpose of the petitioner in making the assignment is to terminate its liability under the lease.

The rules for the interpretation of written contracts are, of course, not in dispute. The intent of the parties is the guiding star in the interpretation, and all parts of the instrument are to be considered together and each word or phrase, if possible, is to be given its ordinary meaning.

The law is well settled, and it is admitted by counsel for the petitioner, that a lessee is not discharged from liability on his covenants in the lease by an assignment in the absence of express or implied agreement on the part of the lessor to that effect, which is the law in the commonwealth of Massachusetts, Way v. Reed, 6 Allen, 364, 369; Talbot et al. v. Rednalloh Co., 283 Mass. 225, 235, 186 N.E. 273, 276, and governs this case. Amer Realty Co., Inc., v. Eastern Tire & Rubber Co., Inc., 274 Mass. 297, 174 N.E. 486; Buchser v. Buchser, 231 U.S. 157, 161, 34 S.Ct. 46, 58 L.Ed. 166.

In Way v. Reed, supra, the court said:

"Doubtless it is competent for a lessor to enter into such stipulations with an assignee as to accept him as sole tenant, and to absolve the original lessee from his contracts. But an intent to create a new contract and to annul the lease as against the original lessee must be clearly shown; otherwise the rule of law by which the lessee and the assignee will both be held liable to the lessor must prevail."

Again in Talbot et al. v. Rednalloh Co., supra, the court said:

"If the defendant was bound as a lessee to the agreement of October 3, 1922, it was not released from the contractual obligations in its covenants by the assignment to L. P. Hollander Co. Inc. with the consent of the lessors. * * * The lessors' consent to the assignment does not indicate an intent to create a new contract and annul the lease as against the original lessees and does not show a surrender of the lease accepted by the lessors. In the case of an assignment by the lessee the collection of rents from the assignee by the lessors does not relieve the lessee from his covenant to pay rent."

Also see Wall v. Hinds, 4 Gray, 256, 64 Am.Dec. 64; Pfaff v. Golden, 126 Mass. 402; Greenleaf et al. v. Allen, 127 Mass. 248; Johnson et al. v. Stone, 215 Mass. 219, 102 N.E. 366; Hamlen v. Rednalloh Co. (Mass.) 197 N.E. 149, 99 A.L.R. 1230; Halbe v. Adams, 172 App.Div. 186, 158 N.Y.S. 380, 382; Midland Telegraph Co. v. National Telegraph News Co., 236 Ill. 476, 86 N.E. 107; Kanawha-Gauley Coal & Coke Co. v. Sharp, 73 W.Va. 427, 80 S.E. 781, 52 L.R.A.(N.S.) 968, Ann. Cas.1916E, 786; 16 R.C.L. p. 843, § 343; p. 846, § 346.

It appears from the cases cited above that the mere assignment of a lease, even with the consent of the lessor, does not relieve the original lessee from liability under his express covenants. To absolve the original lessee from liability in case of an assignment, it must appear in fact that the lessor has contracted that the lessee shall not be further liable.

Counsel for the appellant, however, thinks he finds within the four corners of this lease an implied release of the lessee in case of an assignment. Such a release, however, should clearly appear from the terms of the lease, especially if an assignment to a straw assignee amounts in fact to a termination of the lease, which in this case has at least thirty-five more years to run.

Counsel for the appellant suggests that color for his contentions is found in the provision of the lease that gave the lessee an unrestricted right to sublease, which he argues is a power to do everything except terminate liability; and because the additional right to assign without consent was also given, it could only mean that the lessee might by assignment rid itself of the property and of liability.

The relations existing between a lessor and lessee and an assignee are quite different in case of an assignment of a lease and a sublease covering the entire building. In the first case the lessee, unless clearly relieved of his obligation, becomes a surety for the performance of the covenants of the lease by the assignee, and even the acceptance of the rent of the as-

signee by the lessor does not relieve the lessee of this obligation; while in the case of a sublease of the entire premises the lessee remains the tenant to whom the lessor must look for his rental, and the lessee must in the first instance continue to pay the rent and perform the other covenants of the lease.

We think it could not have been in the minds of the parties that the implication contended for should be drawn from the provisions to sublet and to assign. One could not expect a party to lease land for fifty years and construct thereon a building of several stories for chain store purposes at an expense of approximately $800,000 without being assured of the right to sublet parts of the building. This right was essential to the use which the Kresge Company obviously intended to make of the premises.

If any implication arises from the fact that after the erection of the new building the lessee might assign the lease, as in this instance, to an irresponsible party, without the lessors' consent, it is that it was not the intention of the parties to the lease that the lessee should thereby be relieved of all responsibility under its covenants and, in effect, by such an assignment secure a termination of the lease. A clause might as well have been inserted in the lease that the lessee might terminate the lease at any time, which it is obvious the lessors would not have assented to.

Counsel for the appellant also argues that the renewal provisions indicate that the parties intended that the lessee should not in case of an assignment be liable either for the balance of the original term or for a renewal thereof. No such implication arises from the provisions with reference to renewal. If the original lessee should procure a renewal, though resulting in a new lease, it would, of course, be liable under its terms for the rentals. If, however, it assigned the lease, a renewal would, in fact, become a new lease as between the lessors and the assignee, and the lessee would not be liable on the covenants in the new lease. Klickstein v. Neipris, 283 Mass. 91, 185 N.E. 920; Kaskel v. Hollander (C.C.A.) 68 F.(2d) 265.

Counsel for the appellant further contends that the long duration of the term was additional cogent evidence that the parties never intended personal liability of either party, but we think this is no reason for relieving the lessee of its well-settled responsibility under the law. If it wished to be relieved of any obligations during the long term which it entered into, it should have procured a stipulation to that effect in the lease. Since it did not do so, whatever implication arises, therefore, is contrary to such contention.

The court in Taylor v. De Bus, 31 Ohio St. 468, 471, 472, in discussing this question, said:

"Nor does the duration of the term at all affect the obligation of such express covenant. By the common law, the liability of the lessee, on his express covenant to pay rent during the term, attached to him and his personal representative, as long as assets remained in his hands, whether the term of the lease was for one or many years, with or without a covenant for renewal, or in perpetuity. Numerous cases are reported, where the lease was perpetual or renewable forever, in which the same liability was found as in leases for a short term of years."

In this case the court in effect refused to follow the case of Worthington v. Hewes & McCann, 19 Ohio St. 66, cited by appellant in support of its contention, and further said:

"Indeed, it seems, from the nature of the covenant itself, no distinction can be made on account of the duration of the term; it is a personal engagement to pay rent during the term; as long as assets can be found, the obligation may be enforced. The law imposes no limit upon the time within which covenants to pay money must mature. This is left entirely to the discretion of contracting parties."

Counsel for the appellant also contends that, since the provisions of the lease provide that upon entry by the lessors for breach of conditions notice may be sent by registered mail to the S. S. Kresge Company at Detroit, Mich., if it is the lessee, otherwise to the lessee's last-known address, this provision supports the appellant's contentions; but counsel does not quote the entire provisions of the lease with reference to notice in case of default which are: "Whenever any default shall be made in the performance or observance of any of the other covenants by the lessee herein contained and such default in the performance or observance of any of the said other covenants shall have continued for one month after the lessors shall have given to the lessee a notice in writing by registered mail to S. S.

Kresge Company, Detroit, Michigan, of some specific breach of covenant and their intention to re-enter if such breach is continued"; and in case of certain other events occurring the lessors may enter upon the premises and take possession and expel the lessee or those claiming under it, "or the lessors may, at their election, send by registered mail to the S. S. Kresge Company, Detroit, Michigan, if it is the lessee, otherwise to the lessee's last known address, a written demand of possession, and such entry or demand, with or without such expulsion or removal, shall determine this lease."

In other words, in case of default which shall have continued for one month after the lessors shall have given notice to the original lessee of their intent to re-enter if such breach is continued, the lessors may enter upon the premises and take possession thereof and expel the lessee and those claiming under it; or they may send notice by registered mail to the S. S. Kresge Company in case it is in possession; otherwise to the lessee's (assignee's) last-known address, if in possession, a written demand of possession, and such entry or demand without such expulsion or removal shall terminate the lease. "And after such entry or after such demand for possession by the lessors, the lessee shall be guilty of forcible entry and detainer," etc.

Counsel for the appellant also contends that, since there is no express provision reserving rights against the original lessee in the event of an assignment; it is indicative of the intention that the lessee should not be liable after such assignment, but this, we think, ignores the rule of law that in case of an assignment the lessee is liable unless there is an express provision relieving it from its liability, or it appears from the lease by necessary implication that such was the intent of the parties.

It is inconceivable, we think, that, if the parties to the lease here in question had had in mind any such intentions as are now attributed to them by the petitioner, they would not have expressed their meaning by the addition of a few words to the effect that the assignment of the lease would relieve the lessee of further liability thereunder, and would not have left such an important right to implication. Nor do we think that the provision in the lease that all the covenants should run with the land relieves the lessee of its re-sponsibility as surety for an assignee in case of an assignment. Goldberg v. Nicola, 319 Pa. 183, 187, 178 A. 809, 98 A. L.R. 774.

We cannot conceive of attorneys drafting a lease, or even of business men agreeing to the terms of a lease which did not clearly express their intent on such a vital matter as the liability of the lessee in case of assignment, in view of the well-known rule of law upon this point. 68 Beacon Street, Inc., v. Sohier, 289 Mass. 354, 362, 194 N.E. 303; Taylor's Land-lord & Tenant (8th Ed.) Vol. 2, § 438.

The burden is on the lessee, if there is no express provision relieving him of his obligation in case of an assignment, to show that it follows by necessary implication from the provisions of the lease that such was the intent of the parties. The construction of written instruments is for the court and is determined by well-settled rules of law, the purpose of which is to determine the intent of the parties, if not clearly expressed. Ferguson v. Union Mutual Life Ins. Co., 187 Mass. 8, 10, 72 N.E. 358. But intent in the last analysis is a matter of fact. Piedmont Hotel Co. v. A. E. Nettleton Co., 263 N.Y. 25, 188 N.E. 145. We do not find that the District Court erred as a matter of law in construing this lease. There is nothing in the lease from which it can be said to follow as a matter of law that the lessee was to be relieved of all responsibility in case it was assigned. The District Court, upon construing the lease, found as a fact that such was not the intention of the parties and we think it does not appear that he erred in so finding.

The decree of the District Court is affirmed with costs.

MORTON, Circuit Judge (dissenting).

The general rule, that the assignment of a lease by the lessee although assented to by the lessor does not release the lessee from his obligations under the lease, rests on the assumed intent of the parties. It is in effect a construction placed by the courts on a common type of contract applied to common facts. I differ from my brethren in thinking that in the present case the facts and certain provisions of the lease are so exceptional as to take it out of the general rule and show an intention that an assignment of the lease should relieve the lessee from further liability under it.

The right of assignment (in connection with a right of renewal) was purchased by the lessee by the expenditure of between $800,000 and $1,000,000 on the lessors' property. Before this was done the lessee already had an absolute right to "sublet the whole or any part of said demised premises," i. e. an unrestricted right to sublet provided it reserved a short interval before the termination of the lease. No additional advantage to the lessee from assignment has been suggested, if it was to continue liable under the lease. It seems very unlikely that the right of assignment, obtained at such large expense, was granted merely in order to enable the lessee to avoid the necessity of retaking possession for a few hours before the lease expired. The obvious purpose for which the right to assign was granted was to enable the lessee to realize on its large investment in the leasehold property, if it should desire to do so, a purpose which would not be accomplished, practically speaking, if the lessee were to remain liable on the lease. The combination of a right to renew with the right to assign seems not without significance. Assignment of the lease would relieve the lessee from liability on the renewal term, if one should be called for. Kaskel v. Hollander (C.C.A.) 68 F.(2d) 265; Jones Co. v. Winchester Repeating Arms Co. (C.C.A.) 61 F.(2d) 774. So the question really is whether, assuming that there was an intention to release the lessee on a renewal term (when its personal liability would be of greatest value because of the accumulated depreciation on the building), was it still the intention to hold the lessee on the original term after assignment, the right to which had been obtained by erecting an expensive new building on the lessors' property which stood as security for the performance of the lease? I am not aware that the general rule as to intention has ever been applied to such unusual and extreme facts. It is an old rule having its origin in social conditions very different from those today. I do not think it should be extended.

Moreover, the lease itself contains at least one express provision which is consistent only with the view that the assignment of it operated to relieve the lessee from further liability. In the clause dealing with possible bankruptcy of the lessee, it is provided that the lessors may take certain steps to repossess themselves of the property, "or the lessors may, at their election, send by registered mail to the S. S. Kresge Co., Detroit, Michigan, if it is lessee, otherwise to the lessee's last known address a written demand of possession," etc.; and that "after such entry or after such demand for possession by the lessors the lessee shall be deemed guilty of forcible entry and detainer," etc. This plainly contemplates that a situation may arise in which the Kresge Company will not be the lessee. There are also provisions of the most explicit character imposing on the assignee of the lease the obligation to perform all its covenants; and it is also provided that the covenants shall run with the land.

While the length of the term alone is not sufficient to take the case out of the general rule (Taylor v. De Bus, 31 Ohio St. 468, 471, 472), it is a fact which must be considered. Leases having fifty years or more to run are in Massachusetts regarded as freeholds. Mass.Gen.Laws (Ter.Ed.) c. 186, § 1. As to them, there are strong practical reasons for applying the rule as to intention which is applied to personal covenants imposed on a grantee by a conveyance in fee. Broad statements as to imputed intention, in cases dealing with short-term leases where the lessee had added nothing substantial to the value of the property, and in cases where no assent by the lessor to the assignment was required, ought not to be given too much weight. In conveyances of land in fee which contain covenants to be performed by the grantee, the rule of assumed intent is that his liability ceases when he conveys the property. Hickey v. Ry. Co., 51 Ohio St. 40, 36 N.E. 672, 23 L.R.A. 396, 46 Am.St.Rep. 545. Yet the covenant by the grantee is as express, personal, and extensive in such cases as in the case of a lessee. In Sexauer v. Wilson, 136 Iowa, 357, 113 N.W. 941, 944, 14 L.R.A.(N.S.) 185, 15 Ann.Cas. 54, it was said, "It could not have been his (the grantee's) intention to assume an obligation in perpetuum, and, in event of disposing of the fee, to remain bound for life," etc., an observation which for practical purposes is equally applicable to a ninety-nine year lease. On a long lease like this, which runs far beyond the lives of the persons who make it and far beyond any possible business forecast, relatively slight evidence suffices to show that the parties were dealing with the property as a res, and not looking to personal liability. I think there is such evidence in this case.